## Moates et al. v. Rone et al.

(Decided February 2, 1932.)

RODES & HARLIN and R. M. COLEMAN, JR., for appellants.

G. D. MILLIKEN and HUBERT MEREDITH for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

F. R. Morgan, a resident of Warren county, died, unmarried, in the year 1929, leaving several sisters and the son of a deceased sister as his only heirs at law. By his will, which was duly probated in the Warren county court, he made small bequests to certain of his sisters and other relatives and friends, and the remainder of his estate he devised to his sister Sophia E. Rone, giving as a reason that, since the death of his own mother, his sister had been almost a mother to him. Thereafter his other sisters, together with certain beneficiaries in the will, contested the will on the ground of mental incapacity and insane delusion. At the conclusion of the evidence the court instructed on mental incapacity, but refused an offered instruction on insane delusion. The jury found for the will, and the contestants have appealed.

The refusal of the court to instruct on insane delusion is the only ground urged for a reversal. The argument is that the testator labored under the delusion that he had been mistreated by his sisters, whereas the evidence showed that they had always treated him with great kindness and consideration; thus making a case where the question of insane delusion should have been submitted to the jury. In support of this position, appellants rely upon certain evidence which will be briefly stated. J. D. Elkins, who was appointed administrator of the estate of G. M. Morgan, the testator's father, testified that the testator came with him to Bowling Green, and was present at the time of his appointment; that the testator did not make any objection to the appointment, or ask the court to appoint him or any of his sisters; and that following the death of testator's father, and after the testator had a spell of illness, he saw the testator crying on two occasions. Dr. J. A. Burris, who had been the testator's family physician, in addition to giving his opinion that the testator was incompetent to make a will,

testified that on one occasion the testator said that he ought to have been made administrator of his father's estate, but that his sisters had turned their backs on him, and ruled him down, and would not allow him to be appointed. Amber White testified that he had heard testator speak unkindly of his sisters, saying that they had all turned against him, did not want him to wind up his father's estate, and never had treated him just right. Marie Young testified that the testator talked to her about his father's estate, and about his not getting to wind it up; that the testator's sisters always treated the testator kindly; that they would do his washing, carry in his wood, and do his cooking, and that she had never heard one of them give him a short word, or speak to him in an unkind manner. Walter Beck testified that the testator on one occasion after he woke up began crying, and said that some of his sisters had not treated him right, and that generally the testator's conversation was to the effect that his sisters had not treated him right some way or another. W. P. White testified that on one occasion he was on a trip with the testator, who said that his sisters had mistreated him, and did not want him to have anything, and that he wanted to wind up his father's estate, and they would not let him. The record further discloses that J. D. Elkins' appointment as administrator of the estate of testator's father was made on motion of testator and his sisters. On the other hand, we have the following evidence: Mrs. Cassie Moates, sister of the testator, and one of the contestants, testified that she selected her brother-in-law as her father's administrator, and that was her father's request; and that after she requested that Dan Elkins be appointed instead of Fred, Fred quit coming to her house. Mrs. Nettie Elkins, wife of J. D. Elkins, and also a contestant, testified that Fred Morgan was peeved in a way at his sisters because they requested her husband to act as administrator of his father's estate; that Fred asked her if they wanted him to be administrator, and that she told him that all the objection she had against him was that she wanted her father's request carried out; that after their father died, all of them met together and requested the appointment of her husband; that they knew at the time that Fred wanted to be the administrator; that he did not seem to be hurt right at the time, but said that, if the girls wanted Dan Elkins to be administrator, he was willing. There

was further evidence that when testator, during the appraisement of his father's estate, following the statement of some one that such was his father's wish, expressed a desire to have a shotgun and an old gold watch that belonged to his father, the contestants either did not say anything, or said, ''Go on and appraise them.''

An insane delusion is an idea or belief which springs spontaneously from a diseased or perverted mind without reason, or without foundation in fact; it is distinguishable from a belief which is founded upon prejudice or aversion, no matter how unreasonable or unfounded the prejudice or aversion may be. If it is the product of a reasoning mind, no matter how slight the evidence on which it is based, it cannot be classed as an insane delusion. Coffey v. Miller, 160 Ky. 415, 169 S. W. 852, Ann. Cas. 1916C, 30. It is not enough that others might conclude that the testator's belief was unjustified, if the testator was in possession of facts affording a basis for his conclusion. Trustees of Epworth Memorial Methodist Church v. Overman, 185 Ky. 773, 215 S. W. 942. With these principles in mind, let us examine the facts: On the one hand we have the testator's complaint of the treatment that he received from his sisters in the winding up of his father's estate, coupled with the fact that he consented to the appointment of his brother-in-law as administrator, and the further evidence to the effect that his sisters uniformly treated him with great kindness and consideration. On the other hand, some of the contestants admitted, and others do not deny, that testator, who was an only son, wanted to administer his father's estate, and that, notwithstanding his wish, his sisters selected his brother-in-law; and that when he asked to be given his father's shotgun and gold watch they either ignored his request, or said, ''Go on and appraise them''. Plainly the mere fact that he consented to the appointment of his brother-in-law did not show that there was no basis whatever for his feelings against his sisters. His sisters being in the majority, the appointment was within their control, and there was nothing for him to do except to acquiesce in the arrangement. His grievance was not predicated on his opposition to the appointment of his brother-in-law, but on the fact that his sisters opposed his appointment. Now and then a case arises where the evidence is conflicting as to whether there was any basis for the testator's belief, and

as to whether the testator was in possession of facts affording a basis for his conclusion, in which event the question of insane delusion is one for the jury. Lancaster v. Lancaster, 87 S. W. 1137, 27 Ky. Law Rep. 1127. But that is not the case here. On the contrary, the uncontradicted evidence shows that testator was present on both occasions, and knew that his wish to be appointed administrator of his father's estate, as well as his request to be given his father's shotgun and watch, had been ignored by contestants. In the circumstances, his belief that his sisters had treated him unkindly did not spring from a diseased or perverted mind, without reason or without foundation in fact. It was a belief having a substantial basis, and, even if erroneous, was one which a rational person might hold. Hutchinson v. Hutchinson, 250 Ill. 170, 95 N. E. 143. It follows that the evidence that the testator was laboring under an insane delusion was not sufficient to take the case to the jury, and that the offered instruction was properly refused.

Judgment affirmed.